TRACY M. GORMONT,               :
                                :
        Plaintiff               :       No. 3:11-CV-02145
                                :
    vs.                         :       (Judge Nealon)
                                :
MICHAEL J. ASTRUE,              :
COMMISSIONER OF SOCIAL          :
SECURITY,                       :       FILED
                                :       SCRANTON
        Defendant               :

                         MEMORANDUM            MAR - 4 2013

                                        PER _____
                                              DEPUTY CLERK

**BACKGROUND**

The above-captioned action is one seeking review of a
decision of the Commissioner of Social Security ("Commissioner")
denying Plaintiff Tracy M. Gormont's claim for social security
supplemental security income benefits.

Supplemental security income is a federal income
supplement program funded by general tax revenues (not social
security taxes). It is designed to help aged, blind or other
disabled individuals who have little or no income.

Gormont protectively filed[1] her application for
supplemental security income benefits on October 28, 2009. Tr. 11,
58, 119-129 and 136.[2] The application was initially denied by the

---

1. Protective filing is a term for the first time an individual
contacts the Social Security Administration to file a claim for
benefits. A protective filing date allows an individual to have
an earlier application date than the date the application is
actually signed.

2. References to "Tr.__" are to pages of the administrative
                                        (continued...)

Bureau of Disability Determination on February 12, 2010.[3] Tr. 11 and 60-64. On February 22, 2010, Gormont requested a hearing before an administrative law judge. Tr. 11 and 65-67. After about 11 months had passed, a hearing was held before an administrative law judge on January 19, 2011. Tr. 11 and 28-52. Gormont was not represented by counsel at that hearing. Tr. 30-32. On April 15, 2011, the administrative law judge issued a decision denying Gormont's application. Tr. 11-23. As will be explained in more detail *infra*, the administrative law judge found that Gormont could perform a limited range of unskilled, sedentary work. On May 3, 2011, Gormont filed a request for review with the Appeals Council and on September 15, 2011, the Appeals Council concluded that there was no basis upon which to grant Gormont's request for review. Tr. 5-7 and 110.[4] Thus, the administrative law judge's decision stood as the final decision of the Commissioner.

---

2. (...continued)
record filed by the Defendant as part of his Answer on January 13, 2012.

3. The Bureau of Disability Determination is an agency of the state which initially evaluates applications for supplemental security income benefits on behalf of the Social Security Administration. Tr. 61.

4. The record contains two requests for review. Tr. 110-111, 113-114 and 116-117. The first is dated May 2, 2011, and was received by the Social Security Administration on May 3, 2011. Id. The second was dated June 20, 2011, and received by the Social Security Administration on June 22, 2011. Id. It appears that this occurred because the first request at some point was either misplaced or overlooked by the Social Security Administration. Tr. 110-111 and 113-114.

Gormont then filed a complaint in this court on November 16, 2011. Supporting and opposing briefs were submitted and the appeal[5] became ripe for disposition on April 4, 2012, when Gormont filed a reply brief.

Gormont, who was born in the United States on March 28, 1967, graduated from high school in 1985 and can read, write, speak and understand the English language and perform basic mathematical functions. Tr. 119, 140, 147 and 164. During her elementary and secondary schooling, Gormont attended regular education classes. Tr. 147. After high school, Gormont completed training in 1986 to become a licensed cosmetologist and at the time of the administrative hearing Gormont was licensed as such. Tr. 34 and 147. At least one record also reveals that Gormont attended "some college." Tr. 201. Gormont lives with her husband, Mark, and her 4 children. Tr. 34. Gormont has a valid driver's license and drives her two younger children to school "three miles a day" and also drives herself to therapy appointments. Id. Gormont's husband drove her to the administrative hearing. Id. Gormont testified that she is 5 feet, 5 inches in height and weighs 250 pounds, making her morbidly obese.[6] Tr. 35.

---

5. Under the Local Rules of Court "[a] civil action brought to review a decision of the Social Security Administration denying a claim for social security disability benefits" is "adjudicated as an appeal." M.D.Pa. Local Rule 83.40.1.

6. An individual of such height and weight has a body mass index of 41.6 and is considered morbidly obese. Center for Disease
(continued...)

3

Gormont has past relevant employment[7] as a store laborer for Target and Walmart which was described by a vocational expert as unskilled, medium work; a newspaper carrier/delivery person which was described as unskilled, light work as generally performed and medium work as actually performed by Gormont; and as a mailroom inserter which was described as unskilled, light work as generally performed but medium work as actually performed by Gormont.[8] Tr. 48 and 149.

---

6. (...continued)
Control and Prevention. Healthy Weight, Adult BMI Calculator, http://www.cdc.gov/healthyweight/assessing/bmi/a dult_bmi/english_bmi_calculator/bmi_calculator.html (Last accessed February 26, 2013). A person is morbidly obese if the BMI is 40 or greater. BMI Calculator, http://www.bmi-calculator.net/ (Last accessed February 26, 2013). With morbid obesity, the person is especially likely to have serious health problems. Id., http://www.bmi-calculator.net/bmi-classification/bmi-obesity-clas s-3-information.php (Last accessed February 26, 2013).

7. Past relevant employment in the present case means work performed by Gormont during the 15 years prior to the date her claim for supplemental security income benefits was adjudicated by the Commissioner. 20 C.F.R. §§ 404.1560 and 404.1565.

8. The terms sedentary, light and medium work are defined in the regulations of the Social Security Administration as follows:

> (a) *Sedentary work*. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

> (b) *Light work*. Light work involves lifting no more
> (continued...)

Gormont's work history covers the years 1984 through 1989, 1996, 1997, 1999, 2000, 2004 through 2006 and 2008. Tr. 55. Ames's total earnings during those years were $51,144.03. Id. Her annual earnings ranged from a low of $277.37 in 1997 to a high of $13506.90 in 2005. Id.

Gormont claims that she became disabled on July 11, 2009, because of both physical and mental impairments. The physical impairments alleged include a herniated vertebral disk, degenerative disc disease, pain in the right hip and leg, neck and shoulder pain and headaches. Tr. 141. The alleged impetus for the physical problems was a motor vehicle accident which occurred on July 11, 2009. Tr. 200. The primary mental impairments

---

8.  (...continued)
    than 20 pounds at a time with frequent lifting or
    carrying of objects weighing up to 10 pounds. Even
    though the weight lifted may be very little, a job is
    in this category when it requires a good deal of
    walking or standing, or when it involves sitting most
    of the time with some pushing and pulling of arm or leg
    controls. To be considered capable of performing a
    full or wide range of light work, you must have the
    ability to do substantially all of these activities.
    If someone can do light work, we determine that he or
    she can also do sedentary work, unless there are
    additional limiting factors such as loss of fine
    dexterity or inability to sit for long periods of time.

    (c) *Medium work*. Medium work involves lifting no more
    than 50 pounds at a time with frequent lifting or
    carrying of objects weighing up to 25 pounds. If
    someone can do medium work, we determine that he or she
    can do sedentary and light work.

20 C.F.R. § 416.967.

alleged were anxiety and depression. Tr. 141. However, in the present appeal Gormont does not claim that her mental impairments are disabling. Doc. 13, Plaintiff's Brief, p. 10 n. 2; Doc. 15, Plaintiff's Reply Brief, p. 1. Gormont has not worked since July 11, 2009, the alleged disability onset date.

Gormont's alleged disability onset date of July 11, 2009, has no impact on Gormont's application for supplemental security income benefits because supplemental security income is a needs based program and benefits may not be paid for "any period that precedes the first month following the date on which an application is filed or, if later, the first month following the date all conditions for eligibility are met." See 20 C.F.R. § 416.501. As stated above, Gormont protectively filed her application on October 28, 2009. Consequently, Gormont is not eligible for SSI benefits for any period prior to November 1, 2009.

For the reasons set forth below, the Court will remand the case to the Commissioner for further proceedings.

**STANDARD OF REVIEW**

When considering a social security appeal, the Court has plenary review of all legal issues decided by the Commissioner. See Poulos v. Commissioner of Social Security, 474 F.3d 88, 91 (3d Cir. 2007); Schaudeck v. Commissioner of Social Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999); Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995). However, the Court's review of the Commissioner's findings of fact pursuant to 42 U.S.C. § 405(g) is

to determine whether those findings are supported by "substantial evidence." Id.; Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). Factual findings which are supported by substantial evidence must be upheld. 42 U.S.C. §405(g); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001)("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently."); Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)("Findings of fact by the Secretary must be accepted as conclusive by a reviewing court if supported by substantial evidence."); Keefe v. Shalala, 71 F.3d 1060, 1062 (2d Cir. 1995); Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001); Martin v. Sullivan, 894 F.2d 1520, 1529 & 1529 n.11 (11th Cir. 1990).

Substantial evidence "does not mean a large or considerable amount of evidence, but 'rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); Johnson v. Commissioner of Social Security, 529 F.3d 198, 200 (3d Cir. 2008); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence has been described as more than a mere scintilla of evidence but less than a preponderance. Brown, 845 F.2d at 1213. In an adequately developed factual record, substantial evidence may be "something less than the weight of the

evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Federal Maritime Commission, 383 U.S. 607, 620 (1966).

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter, 642 F.2d at 706, and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971). A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason, 994 F.2d at 1064. The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Johnson, 529 F.3d at 203; Cotter, 642 F.2d at 706-707. Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981); Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979).

Another critical requirement is that the Commissioner adequately develop the record. Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000)("The ALJ has an obligation to develop the record in light of the non-adversarial nature of benefits proceedings, regardless of whether the claimant is represented by counsel."); Rutherford v. Barnhart, 399 F.3d 546, 557 (3d Cir. 2005); Fraction v. Bowen, 787 F.2d 451, 454 (8th Cir. 1986); Reed v. Massanari,

270 F.3d 838, 841 (9th Cir. 2001); <u>Smith v. Apfel</u>, 231 F.3d 433.

437 (7th Cir. 2000); <u>see also</u> <u>Sims v. Apfel</u>, 530 U.S. 103, 120

S.Ct. 2080, 2085 (2000)("It is the ALJ's duty to investigate the

facts and develop the arguments both for and against granting

benefits[.]"). If the record is not adequately developed, remand

for further proceedings is appropriate. <u>Id.</u>

## SEQUENTIAL EVALUATION PROCESS

To receive disability benefits, the plaintiff must

demonstrate an "inability to engage in any substantial gainful

activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has

lasted or can be expected to last for a continuous period of not

less than 12 months." 42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a
> disability only if his physical or mental impairment or
> impairments are of such severity that he is not only
> unable to do his previous work but cannot, considering
> his age, education, and work experience, engage in any
> other kind of substantial gainful work which exists in
> the national economy, regardless of whether such work
> exists in the immediate area in which he lives, or
> whether a specific job vacancy exists for him, or whether
> he would be hired if he applied for work. For purposes
> of the preceding sentence (with respect to any
> individual), "work which exists in the national economy"
> means work which exists in significant numbers either in
> the region where such individual lives or in several
> regions of the country.

42 U.S.C. § 423(d)(2)(A).

The Commissioner utilizes a five-step process in

evaluating supplemental security income claims. <u>See</u> 20 C.F.R. §

416.920; <u>Poulos</u>, 474 F.3d at 91-92. This process requires the

9

Commissioner to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity,[9] (2) has an impairment that is severe or a combination of impairments that is severe,[10] (3) has an impairment or combination of impairments that meets or equals the requirements of a listed impairment,[11] (4) has the residual functional capacity to return to his or her past work and

---

9. If the claimant is engaging in substantial gainful activity, the claimant is not disabled and the sequential evaluation proceeds no further. Substantial gainful activity is work that "involves doing significant and productive physical or mental duties" and "is done (or intended) for pay or profit." 20 C.F.R. § 416.910.

10. The determination of whether a claimant has any severe impairments, at step two of the sequential evaluation process, is a threshold test. 20 C.F.R. § 416.920(c). If a claimant has no impairment or combination of impairments which significantly limits the claimant's physical or mental abilities to perform basic work activities, the claimant is "not disabled" and the evaluation process ends at step two. Id. If a claimant has any severe impairments, the evaluation process continues. 20 C.F.R. § 416.920(d)-(g). Furthermore, all medically determinable impairments, severe and non-severe, are considered in the subsequent steps of the sequential evaluation process. 20 C.F.R. §§ 416.923 and 416.945(a)(2). An impairment significantly limits a claimant's physical or mental abilities when its effect on the claimant to perform basic work activities is more than slight or minimal. Basic work activities include the ability to walk, stand, sit, lift, carry, push, pull, reach, climb, crawl, and handle. 20 C.F.R. § 416.945(b). An individual's basic mental or non-exertional abilities include the ability to understand, carry out and remember simple instructions, and respond appropriately to supervision, coworkers and work pressures. 20 C.F.R. § 416.945(c).

11. If the claimant has an impairment or combination of impairments that meets or equals a listed impairment, the claimant is disabled. If the claimant does not have an impairment or combination of impairments that meets or equals a listed impairment, the sequential evaluation process proceeds to the next step.

(5) if not, whether he or she can perform other work in the national economy. Id. As part of step four, the administrative law judge must determine the claimant's residual functional capacity. Id.[12]

Residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. See Social Security Ruling 96-8p, 61 Fed. Reg. 34475 (July 2, 1996). A regular and continuing basis contemplates full-time employment and is defined as eight hours a day, five days per week or other similar schedule. The residual functional capacity assessment must include a discussion of the individual's abilities. Id.; 20 C.F.R. § 416.945; Hartranft, 181 F.3d at 359 n.1 ("'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).").

**MEDICAL RECORDS**

Before the Court addresses the administrative law judge's decision and the arguments of counsel, some of Gormont's medical records will be reviewed.

On July 13, 2009, Gormont had an appointment at Southern Cove Medical Associates. Tr. 220. At that appointment, Gormont

---

12. If the claimant has the residual functional capacity to do his or her past relevant work, the claimant is not disabled.

reported that she had been involved in a car accident 2 days earlier, resulting in back pain radiating into her right side. Id.

On July 30, 2009, Gormont had an MRI of the lumbar spine performed at Mount Nittany Medical Center which revealed "moderate disc space narrowing at L5-S1" and "a broad-based posterior disc bulge with a focal central disc protrusion" which resulted "in moderate bilateral neural foraminal narrowing." Tr. 226-227. The broad-based disc bulge "appear[ed] to abut the traversing left S1 nerve root" and "deform the traversing right S1 nerve root." Tr. Id. A neurosurgeon, Joseph C. Maroon, M.D., who reviewed this MRI on February 12, 2010, stated as follows: "The MRI revealed degenerative disks at L5-S1, as well as disk protrusion at L5-S1 central and eccentric to the right. The disk protrusion could certainly cause some low back pain and right buttock pain." Tr. 322. The MRI was also interpreted as revealing a herniated nucleus pulposus at L5-S1.[13] Tr. 227 and 259. An MRI of Gormont's cervical

---

13. The intervertebral discs, the soft cushions between 24 of the bony vertebral bodies, have a tough outer layer and an inner core composed of a gelatin-like substance, the nucleus pulposus. The outer layer of an intervertebral disc is called the annulus fibrosus. A bulge (protrusion) is where the annulus of the disc extends beyond the perimeter of the vertebral bodies. A herniation is where the nucleus pulposus goes beyond its normal boundary into the annulus and presses the annulus outward or ruptures the annulus. Such bulges (protrusions) and herniations, if they contact nerve tissue, can cause pain.

spine performed on April 22, 2010, revealed "minimal disc bulge at C5-C6 and C6-C7." Tr. 363.

The assessments of both a treating physician, Patrick McLucas, D.O., and a treating chiropractor, Susan Harchak, D.C., preclude Gormont from engaging in full-time sedentary employment. Tr. 257-258, 333-340, 375-378 and 403-406. Dr. Harchak treated Gormont from October 5, 2009, to November 8, 2010. Tr. 256-318 and 373-402. Dr. McLucas also treated Gormont at Southern Cove Medical Associates over an extended period of time.[14] Tr. 215-230, 325-336 and 407-410.

On June 30, 2010, Dr. Harchak completed, on behalf of Gormont, a document entitled "Medical Source Statement of Claimant's Ability to Perform Work-Related Physical Activities." Tr. 257-258. In that document, Dr. Harchak stated that Gormont in an 8-hour workday could only occasionally lift or carry 2 to 3 pounds, stand and walk for 1 hour or less, and sit for 1 to 2 hours. Tr. 257. Dr. Harchak stated that Gormont was limited in her

14. A pain management specialist, Fred K. Khalouf, D.O., on August 26, 2009, stated that Gormont's MRI of the lumbar spine revealed "evidence of a degenerative L5-S1 broad-based disk protrusion which may be causing an annular leak." Tr. 236. In comparison to the extensive treatment provided by Dr. McLucas and Dr. Harchak, Dr. Khalouf appears to have only examined Gormont on three occasions: August 26, September 23 and November 3, 2009. Tr. 200-207. On November 3, 2009, Dr. Khalouf did note that Gormont's "symptoms are out of proportion to the objective findings." Tr. 208.

ability to push and pull with the upper and lower extremities and in her ability to reach, handle, finger, and feel. Tr. 257-258. Dr. Harchak further reported that Gormont could never bend, kneel, balance or climb and only occasionally stoop and crouch. Tr. 258. Dr. Harchak referred to Gormont's "herniated cervical [and] lumbar discs" in support of her opinion. Tr. 257.

On August 3, 2010, Dr. Harchak completed a second medical source statement, a document entitled "Medical Statement Regarding Social Security Disability Claim" and a document entitled "Medical Statement Regarding Pain." Tr. 337-340. The medical source statement was similar to the one completed on June 30, 2010. However, Dr. Harchak also reported that Gormont needed to alternate sitting and standing, experiences fatigue and requires rest periods during the day, suffers from severe pain, and needs to occasionally elevate her legs during an 8-hour workday. Tr. 338. In support of her assessment, Dr. Harchak noted Gormont's "weakness [and] pain of the arms [and] right leg as related to the disc herniations." Tr. 339. In the document entitled "Medical Statement Regarding Social Security Disability Claim" Dr. Harchak noted the following findings on Gormont's most recent examination: "reduced cervical [and] lumbar range of motion[,] lower C fixation with crepitus, Spurling's Test +, + right LE." Tr. 337. Dr. Harchak also stated that Gormont had no work capacity. Id. In the document entitled

"Medical Statement Regarding Pain" Dr. Harchak noted that Gormont had severe pain and multiple cervical and lumbar disc herniations with radiculopathy and neurological changes to the upper and lower extremities. Tr. 340.

Dr. Harchak completed similar documents on November 8, 2010 and January 3, 2011. Tr. 376-378 and 403-406. However, in the medical source statement dated January 3, 2011, Dr. Harchak rated Gormont's pain as moderate to severe. Tr. 404.

On July 16, 2010, Dr. McLucas completed a document entitled "Medical Source Statement of Claimant's Ability to Perform Work-Related Physical Activities." Tr. 334-335. Dr. McLucas found that Gormont could only occasionally lift and/or carry less than 10 pounds, stand and/or walk less than 2 hours, requires frequent changes in position, must periodically alternate sitting and standing at intervals not to exceed 15 minutes, experiences fatigue, requires rest periods during the day and suffers from severe pain. Tr. 334. Dr. McLucas found that Gormont had limited ability to push and pull with the upper extremities and limited ability to reach. Tr. 335. He further found that Gormont could never climb, balance, stoop, kneel, crouch and crawl and should avoid all exposure to heights, moving machinery and vibration and avoid concentrated exposure to temperature extremes. Id.

15

Gormont was treated with pain medications, epidural steroid injections, physical therapy and chiropractic adjustments resulting in temporary and short-term relief.

The record does not contain a medical opinion regarding Gormont's functional abilities contrary to the opinions expressed by Dr. McLucas and Dr. Harchak. No physician reviewed Gormont's medical records and found that they were unsupportive of the opinions of Dr. McLucas and Dr. Harchak regarding Gormont's functional abilities.

## DISCUSSION

The administrative law judge, at step one of the sequential evaluation process, found that Gormont has not engaged in substantial gainful work activity since October 28, 2009, the date Gormont filed her application for supplemental security income benefits.[15]   Tr. 13.

At step two, the administrative law judge found that Gormont suffers from the following severe impairments: "cervical radiculitis and disc bulges, L5-S1 degenerative disc disease and disc protrusions, asthma, and depression, [not otherwise specified]." Id. The administrative law judge found that

---

15.   The record reveals that Gormont in fact has not engaged in any substantial gainful activity since the year 2006. Tr. 55.

Gormont's obesity, a bladder control problem and a vision problem were non-severe impairments.[16]  Tr. 14.

At step three of the sequential evaluation process, the administrative law judge found that Gormont's impairments did not individually or in combination meet or equal a listed impairment. Tr. 15-17.

In addressing step four of the sequential evaluation process in his decision, the administrative law judge found that Gormont could not perform her past light to medium work as a store laborer, newspaper carrier and mailroom inserter but that she could perform a limited range of sedentary work.  Tr. 17-21. Specifically, the administrative law judge found that Gormont could perform sedentary work as defined in the regulations but,

16.  The administrative law judge did not address the issue of whether or not Gormont suffered from lumbar radiculopathy. Radiculopathy is a condition where one or more nerves or nerve roots are affected and do not work properly. The nerve roots are branches of the spinal cord.  They carry signals to the rest of the body at each level along the spine. Radiculopathy is a result of disc herniation or an injury causing foraminal impingement of an exiting nerve (the narrowing of the channel through which a nerve root passes).  See, generally, Radiculopathy, MedicineNet.com, http://www.medicinenet.com/radiculopathy/ article.htm (Last accessed February 27, 2013).  A herniated disc is one cause of radiculopathy. Id.  Radiculopathy is a step beyond degenerative disc disease and severe cases may require surgical intervention. Id. However, "the majority of patients respond well to conservative treatment options." Id.  Radiculitis is "inflamation of the root of a spinal nerve, especially of that portion of the root which lies between the spinal cord and the intervertebral canal." Dorland's Illustrated Medical Dictionary, 1571 (32nd Ed. 2012).

she cannot lift more than ten pounds, and can customarily not sit more than six of eight hours a workday . . . Additionally, the claimant is limited to one to two hours of walking and standing out of an eight hour workday. The claimant must avoid postural maneuvers such as balancing, kneeling, crouching, crawling, and climbing. She can occasionally stoop. She must be afforded the option to sit and stand during the work day, one to two minutes every hour or so. She must avoid pushing and pulling with the extremities. She must avoid hot and cold temperature extremes, excessive vibration, extreme dampness, and humidity. She is limited to occupations which do not require exposure to dangerous machinery and unprotected heights. She is limited to simple, routine, repetitive tasks due to pain and depression.

Tr. 17. In arriving at this residual functional capacity, the administrative law judge rejected the assessments of Dr. McLucas and Dr. Harchak. Tr. 20.

At step five, the administrative law judge based on the above residual functional capacity and the testimony of a vocational expert found that Gormont had the ability to perform unskilled, sedentary work as an addresser, surveillance system monitor, and a call out operator,[17] and that there were a

---

17.   The vocational expert testified that the addresser position would require frequent reaching, the call out operator would require occasional reaching and possibly the surveillance system monitor would also require occasional reaching. Tr. 50. Both Dr. McLucas and Dr. Harchak found that Gormont had a limited ability to reach. The administrative law judge did not include any limitation with respect to reaching in Gormont's residual functional capacity.

significant number of such jobs in the local and national economies. Tr. 22 and 49-50.

The administrative record in this case is 410 pages in length consisting, *inter alia*, of vocational and medical records. The Court has thoroughly reviewed that record. Gormont argues, *inter alia*, that the administrative law judge erred by failing to appropriately evaluate the opinions of Dr. McLucas and Dr. Harchak. That argument has substantial merit.

The preference for the treating physician's opinion has been recognized by the Court of Appeals for the Third Circuit and by all of the federal circuits. See, *e.g.*, Morales v. Apfel, 225 F.3d 310, 316-18 (3d Cir. 2000). When the treating physician's opinion conflicts with a non-treating, non-examining physician's opinion, the administrative law judge may choose whom to credit in his or her analysis, but "cannot reject evidence for no reason or for the wrong reason." Id. In choosing to reject the evaluation of a treating physician, an administrative law judge may not make speculative inferences from medical reports and may reject treating physician's opinions outright only on the basis of contradictory medical evidence. Id. An administrative law judge may not reject a written medical opinion of a treating physician based on his or her own credibility judgments, speculation or lay opinion. Id. An administrative law judge may not disregard the medical opinion of a treating physician based solely on his or her

19

own "amorphous impressions, gleaned from the record and from his evaluation of the [claimant]'s credibility." <u>Id.</u> As one court has stated, "Judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor" because "lay intuitions about medical phenomena are often wrong." <u>Schmidt v. Sullivan</u>, 914 F.2d 117, 118 (7th Cir 1990).

In this case, in rejecting the opinions of Dr. McLucas, the treating physician, and Dr. Harchak, a treating chiropractor, the ALJ did not point to any contrary medical opinion. The evaluations of Dr. McLucas and Dr. Harchak preclude full-time work. The ALJ engaged in her own lay analysis of the medical records.[18] This was clear error.

The Court recognizes that the residual functional capacity assessment must be based on a consideration of all the evidence in the record, including the testimony of the claimant regarding her activities of daily living, medical records, lay evidence and evidence of pain. <u>See</u> <u>Burnett v. Commissioner of Social Sec. Admin.</u>, 220 F.3d 112, 121-122 (3d Cir 2000). However, rarely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician

---

18.  The administrative law judge engaged in his own lay analysis of the medical records when he stated that the progress notes of Dr. McLucas and Dr. Harchak do not support the physical functional limitations assessed by them. Tr. 20.

20

regarding the functional abilities of the claimant.  See Doak v.
Heckler, 790 F.2d 26, 29 (3d Cir. 1986)("No physician suggested
that the activity Doak could perform was consistent with the
definition of light work set forth in the regulations, and
therefore the ALJ's conclusion that he could is not supported by
substantial evidence."); 20 C.F.R. § 404.1545(a).

> As two commentators have explained:
>
>> Sometimes administrative law judges assert that they -
>> and not physicians - have the right to make residual
>> functional capacity determinations. In fact, it can
>> reasonably be asserted that the ALJ has the right to
>> determine whether a claimant can engage in sedentary,
>> light, medium, or heavy work.  The ALJ should not assume
>> that physicians know the Social Security
>> Administration's definitions of those terms. However,
>> the underlying determination is a medical determination,
>> i.e., that the claimant can lift five, 20, 50, or 100
>> pounds, and can stand for 30 minutes, two hours, six
>> hours, or eight hours. That determination must be made
>> by a doctor. Once the doctor has determined how long the
>> claimant can sit, stand or walk, and how much weight the
>> claimant can lift and carry, then the ALJ, with the aid
>> of a vocational expert if necessary, can translate that
>> medical determination into a residual functional
>> capacity determination.  Of course, in such a situation
>> a residual functional capacity determination is merely a
>> mechanical determination, because the regulations
>> clearly and explicitly define the various types of work
>> that can be performed by claimants, based upon their
>> physical capacities.

Carolyn A. Kubitschek & Jon C. Dubin, Social Security Disability
Law and Procedure in Federal Courts, 287-88 (2011)(emphasis
added); see also Woodford v. Apfel, 93 F.Supp.2d 521, 529
(S.D.N.Y. 2000)("An ALJ commits legal error when he makes a
residual functional capacity determination based on medical

reports that do not specifically explain the scope of claimant's work-related capabilities."); Zorilla v. Chater, 915 F.Supp. 662, 667 (S.D.N.Y. 1996)("The lay evaluation of an ALJ is not sufficient evidence of the claimant's work capacity; an explanation of the claimant's functional capacity from a doctor is required."). The administrative law judge cannot speculate as to a claimant's residual functional capacity but must have medical evidence, and generally a medical opinion regarding the functional capabilities of the claimant, supporting his determination. Id.; see also Yanchick v. Astrue, Civil No. 10-1654, slip op. at 17-19 (M.D.Pa. April 27, 2011)(Muir, J.)(Doc. 11); Coyne v. Astrue, Civil No. 10-1203, slip op. at 8-9 (M.D.Pa. June 7, 2011)(Muir,J.)(Doc. 21); Crayton v. Astrue, Civil No. 10-1265, slip op. at 38-39 (M.D.Pa. September 27, 2011)(Caputo, J.)(Doc. 17); Dutton v. Astrue, Civil No. 10-2594, slip op. at 37-39(M.D.Pa. January 31, 2012)(Munley, J.)(Doc. 14); Gunder v. Astrue, Civil No. 11-300, slip op. at 44-46 (M.D.Pa. February 15,

2012)(Conaboy, J.)(Doc. 10);[19] <u>Ames v. Astrue</u>, Civil No. 3:11-CV-1775, slip op. at 55-58 (M.D.Pa. February 4, 2013).[20]

The Court's review of the administrative record reveals that the decision of the Commissioner is not supported by substantial evidence. Therefore, pursuant to 42 U.S.C. § 405(g),

---

19. In <u>Gunder</u> Judge Conaboy reconciled the case of <u>Chandler v. Commissioner of Soc. Sec.</u>, 667 F.3d. 356, 362 (3d Cir. 2011) with <u>Doak v. Heckler</u>, 790 F.2d 26, 29 (3d Cir.1986). Judge Conaboy stated as follows:

> Any argument from the Commissioner that his administrative law judges can set the residual function capacity in the absence of medical opinion or evidence must be rejected in light of <u>Doak</u>. Furthermore, any statement in <u>Chandler</u> which conflicts (or arguably conflicts) with <u>Doak</u> is *dicta* and must be disregarded. <u>Government of Virgin Islands v. Mills</u>, 634 F.3d 746, 750 (3d Cir. 2011)(a three member panel of the Court of Appeals cannot set aside or overrule a precedential opinion of a prior three member panel).

Slip op. at 45-46.

20. The Commissioner repeatedly opposes appeals in this Court where the ALJ's decision relating to the claimant's residual functional capacity is defective because of a lack of supporting medical opinion. This is likely because the Social Security Administration has a policy of nonacquiescence, i.e., the policy of not following precedents set by both District Courts and Courts of Appeals other than with respect to the claimant named in a particular decision. <u>See</u> Office of Hearings and Appeals Handbook, § 1-161, quoted in <u>Stieberger v. Heckler</u>, 615 F.Supp. 1315 (S.D. N.Y. 1985), vacated, 801 f.2d 29 (2d Cir. 1986)("[W]here a district court or circuit court[']s decision contains interpretations of the law, regulations, or rulings [that] are inconsistent with the Secretary's interpretations, the [administrative law judges] should not consider such decisions binding on future cases simply because the case is not appealed.").

23

the decision of the Commissioner will be vacated and the case will be remanded[21] to the Commissioner for further proceedings.

An appropriate order follows.

_____
**United States District Judge**

Dated: March 4, 2013

---

21. To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). The Court is remanding this case because the opinions of Dr. McLucas and Dr. Harchak did not address the durational element. Under that circumstance, the ALJ should have sought clarification from them or in the alternative obtained medical testimony at the administrative hearing or ordered a consultative medical examination of Gormont and review of her medical records.